[No. C055402. Third Dist. Nov. 14, 2007.]

JESS BOURQUEZ et al., Petitioners, v.
THE SUPERIOR COURT OF SACRAMENTO COUNTY, Respondent;
THE PEOPLE, Real Party in Interest.

1276

## Counsel

Saria & Saria, Robert J. Saria and Sarah Namnama Saria for Petitioners.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Jane N. Kirkland and Julie A. Hokans, Deputy Attorneys General, for Real Party in Interest.

## Opinion

**MORRISON, J.**—Petitioners are a number of individuals who have been subjected to involuntary two-year commitments pursuant to the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.) and had petitions to extend their commitments pending when Senate Bill No. 1128

(2005–2006 Reg. Sess.) was passed and when Proposition 83 was passed in the November 2006 general election. They seek a writ of mandate or prohibition directing the Sacramento County Superior Court to vacate its order finding the court has jurisdiction to proceed on petitions to extend their commitments. Petitioners contend the court has no jurisdiction because Senate Bill No. 1128 and then Proposition 83 amended the SVPA to delete all provisions for proceedings to extend commitments. Absent statutory authority to extend their commitments, petitioners contend they must be released.

 We deny the writ. Where the government's authority to act rests solely on a statutory basis, the repeal of the statute without a saving clause will terminate all pending actions. A saving clause may be express or implied. By changing the terms of commitment under the SVPA from two-year terms to indefinite terms, the Legislature and then the voters demonstrated an intent to keep those found to be sexually violent predators (SVP's) committed until they no longer meet the definition of an SVP. From the very purpose of the amendment of the SVPA, a saving clause is implied. Under the implied saving clause, the superior court has jurisdiction to proceed on the petitions to extend petitioners' commitments. Under the provisions of the SVPA, as amended by Senate Bill No. 1128 (2005–2006 Reg. Sess.) and by Proposition 83, the petitions to extend commitment are petitions for indefinite commitment.[1]

## BACKGROUND

Under the SVPA, until it was amended in 2006, a person determined to be an SVP was committed to the custody of the Department of Mental Health for a period of two years and was not kept in actual custody for longer than two years unless a new petition to extend the commitment was filed. (Welf. & Inst. Code, former § 6604; Stats. 1995, ch. 763, § 3, p. 5922.) Welfare and Institutions Code former section 6604.1 provided when the initial two-year term of commitment and subsequent terms of extended commitment began. (Stats. 1998, ch. 19, § 5.)

On September 20, 2006, the Governor signed the Sex Offender Punishment, Control, and Containment Act of 2006, Senate Bill No. 1128 (2005–2006 Reg. Sess.) (Senate Bill 1128). (Stats. 2006, ch. 337.) Senate Bill 1128 was urgency legislation that went into effect immediately. (Stats. 2006, ch. 337, § 62.) Among other things, it amended provisions of the SVPA to provide the initial commitment set forth in Welfare and Institutions Code section 6604 was for an indeterminate term. (Stats. 2006, ch. 337, § 55.) All references to

---

[1] Division One of the Fourth District reached the same conclusions in *People v. Shields* (2007) 155 Cal.App.4th 559 [65 Cal.Rptr.3d 922].

an extended commitment in sections 6604 and 6604.1 of the Welfare and Institutions Code were deleted. (Stats. 2006, ch. 337, §§ 55, 56.)

A final analysis of Senate Bill 1128 noted, "Major changes to the SVP program will eventually result in increased annual costs in the tens of millions of dollars from increasing the number of SVP referrals, hearings, and commitments, and increasing the length of commitments." (Sen. Rules Com., Off. of Sen. Floor Analyses, Analysis of Senate Bill 1128 (2005–2006 Reg. Sess.) as amended Aug. 22, 2006, p. 6.) An argument in support of Senate Bill 1128 asserted, " 'By taking this comprehensive approach SB 1128 will make all of California's communities safer from all sexual predators, not just some.' " (*Id.* at p. 7.)

At the November 7, 2006 General Election, the voters approved Proposition 83, an initiative measure. (See Deering's Ann. Welf. & Inst. Code (2007 supp.) appen. foll. § 6604, p. 43.) Proposition 83 was known as "The Sexual Predator Punishment and Control Act: Jessica's Law." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.) Among other things, Proposition 83 "requires that SVPs be committed by the court to a state mental hospital for an undetermined period of time rather than the renewable two-year commitment provided for under existing law." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) analysis of Prop. 83 by Legis. Analyst, p. 44.)

Proposition 83 amended Welfare and Institutions Code section 6604 in the same manner as Senate Bill 1128, changing the term of commitment to an indeterminate term and deleting all references to extended commitments in that section. (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 137.) Welfare and Institutions Code section 6604 now provides in part: "If the court or jury determines that the person is a sexually violent predator, the person shall be committed for an indeterminate term to the custody of the State Department of Mental Health for appropriate treatment and confinement in a secure facility designated by the Director of Mental Health."

Proposition 83 did not amend Welfare and Institutions Code section 6604.1 in exactly the same manner as did Senate Bill 1128,[2] but retained a reference to extended commitments. Welfare and Institutions Code section 6604.1 now reads as follows:

---

[2] Senate Bill 1128 amended Welfare and Institutions Code section 6604.1 to read as follows: "(a) The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section.

"(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department

"(a) The indeterminate term of commitment provided for in Section 6604 shall commence on the date upon which the court issues the initial order of commitment pursuant to that section.

"(b) The person shall be evaluated by two practicing psychologists or psychiatrists, or by one practicing psychologist and one practicing psychiatrist, designated by the State Department of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed for purposes of extended commitments. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings."

In Proposition 83, the People find and declare: "California is the only state, of the number of states that have enacted laws allowing involuntary civil commitments for persons identified as sexually violent predators, which does not provide for indeterminate commitments. California automatically allows for a jury trial every two years irrespective of whether there is any evidence to suggest or prove that the committed person is no longer a sexually violent predator. As such, this act allows California to protect the civil rights of those persons committed as a sexually violent predator while at the same time protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.)

The intent clause of Proposition 83 reads: "It is the intent of the People of the State of California in enacting this measure to strengthen and improve the laws that punish and control sexual offenders. It is also the intent of the People of the State of California that if any provision in this act conflicts with any other provision of law that provides for a greater penalty or longer period of imprisonment the latter provision shall apply." (Voter Information Guide, Gen. Elec., *supra*, text of Prop. 83, p. 138.)

Prior to the passage of Senate Bill 1128, petitioners' two-year commitments as SVP's had expired and petitions to extend their commitments were pending. These petitions were still pending when Proposition 83 was passed. The People notified petitioners of the intent to apply Proposition 83 to the pending petitions. On its own motion, the court raised the issue of whether it had jurisdiction to proceed on the petitions to extend commitment after the enactment of Senate Bill 1128 and the passage of Proposition 83. The court requested briefing on two issues:

---

of Mental Health. The provisions of subdivisions (c) to (i), inclusive, of Section 6601 shall apply to evaluations performed pursuant to a trial conducted pursuant to subdivision (f) of Section 6605. The rights, requirements, and procedures set forth in Section 6603 shall apply to all commitment proceedings." (Difference underscored.)

"(1) In light of the statutory changes to Welf. & Inst. Code § 6600 et seq. in 2006 Stats., ch. 337 and Proposition 83, neither of which contains a savings clause, and *Baker v. Superior Court* (1984) 35 Cal.3d 663 [200 Cal.Rptr. 293, 677 P.2d 219], does the court currently have jurisdiction over the SVP extension proceeding that has been pending before this court in this case?

"(2) If the court does have jurisdiction, is the defendant now subject to an extension period of two years or of an indeterminate life term?"

The court consolidated several cases for the limited purpose of determining these issues.

The court ruled that it had jurisdiction and the petitions for extended commitment would be considered as petitions for an indeterminate term.

Petitioners sought a writ of mandate or prohibition directing the superior court to vacate its order finding jurisdiction and to enter a new order dismissing the petitions for commitment for lack of jurisdiction. Alternatively, petitioners sought a writ of mandate or prohibition directing the superior court to vacate its order that petitioners were subject to the amendments to the SVPA created by the passage of Proposition 83.

This court issued an alternative writ, directing the superior court to grant the requested relief or show cause why it should not be granted.

DISCUSSION

I

Petitioners contend that since the provisions for extended commitments under the SVPA were deleted by Proposition 83 (and before then by Senate Bill 1128), and since there is currently no statutory authority for petitions to extend commitment, the petitions pending to extend their commitments should be dismissed. Further, since the SVPA authorizes a petition to commit only for those in custody of the Department of Corrections and Rehabilitation (Welf. & Inst. Code, § 6601, subd. (a)), and since they are no longer in the custody of the Department of Corrections and Rehabilitation, having previously been committed to the custody of the Department of Mental Health, new petitions for commitment cannot be filed.

We consider the effect of Senate Bill 1128 and Proposition 83 in deleting the provisions of the SVPA for extending commitments. It is well established under the common law "that when a pending action rests solely

on a statutory basis, and when no rights have vested under the statute, 'a repeal of such a statute without a saving clause will terminate all pending actions based thereon.' [Citation.]" (*Governing Board v. Mann* (1977) 18 Cal.3d 819, 829 [135 Cal.Rptr. 526, 558 P.2d 1].) " 'The justification for this rule is that all statutory remedies are pursued with full realization that the [L]egislature may abolish the right to recover at any time.' [Citation.]" (*Ibid.*)

■ The government's authority to commit someone under the SVPA is statutory; it is based on the provisions of the SVPA. Senate Bill 1128 and Proposition 83 repealed the provisions of the SVPA permitting extensions of commitment. Therefore, the authority to bring a petition to extend commitment under the SVPA terminated unless there is a saving clause.

■ When the Legislature repeals a statute but intends to save the rights of litigants in pending actions, it may accomplish that purpose by including an express saving clause in the repealing act. (*Traub v. Edwards* (1940) 38 Cal.App.2d 719, 721 [102 P.2d 463].) An express saving clause is not, however, the only means to save rights in pending actions. " 'An express saving clause in a repealing statute is not required in order to prevent the destruction of rights existing under the former statute, if the intention to preserve and continue such rights is otherwise clearly apparent. Thus, if it can be gathered from any act on the same subject passed by the [L]egislature at the same session that it was the legislative intent that pending proceedings should be saved, it will be sufficient to effect that purpose.' " (*Id.* at p. 722; accord, *County of Alameda v. Kuchel* (1948) 32 Cal.2d 193, 198 [195 P.2d 17].)

■ More recently, the California Supreme Court explained an express saving clause is not necessary because courts have no authority to dictate the form of the expression of legislative intent. (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1048–1049 [36 Cal.Rptr.2d 74, 884 P.2d 1022].) "Rather, what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*Id.* at p. 1049.)

A search for legislative intent in a context similar to that presented here was before the court in *Baker v. Superior Court* (1984) 35 Cal.3d 663 [200 Cal.Rptr. 293, 677 P.2d 219] (*Baker*). Petitioners had been convicted of sex offenses with minors and committed to the Department of Mental Health as mentally disordered sex offenders (MDSO's), and the district attorney timely petitioned to extend their commitments. Petitioners asserted the court lacked jurisdiction to extend their commitments because the MDSO provisions of the Welfare and Institutions Code had been repealed. They argued if the Legislature intended to permit extended commitments, it would have provided an express saving clause. (*Id.* at p. 666.)

The high court found the indications of legislative intent were contrary to petitioners' position. (*Baker, supra*, 35 Cal.3d at p. 666.) The legislative purpose in repealing the MDSO commitment procedures was "to treat sexual offenders more harshly." (*Ibid.*) The intent to retain the program for those already committed was clearly stated in the repealing statute. It provided: " 'Nothing in this act shall be construed to affect any person under commitment [as an MDSO] . . . prior to the effective date of this act. It is the Legislature's intent that persons committed as mentally disordered sex offenders and persons whose terms of commitment are extended under the provisions of Section 6316 of the Welfare and Institutions Code shall remain under these provisions until the commitments are terminated and the persons are returned to the court for resumption of the criminal proceedings.' " (*Ibid.*, italics omitted.) The Legislature found and declared " 'that it is necessary to retain persons under this commitment who committed their crimes before the effective date of this enactment in order to have proper control over these persons and to protect society against repeated commission of sex crimes . . . .' " (*Id.* at p. 667, italics omitted.) Finally, the legislative history of a subsequent bill noted that bill applied to MDSO's who were still subject to extended commitments. (*Id.* at p. 668.) "In sum, the language of the repealing statute as well as the legislative history described above convinces us that the Legislature did not intend to preclude extension of commitments after January 1, 1982, for those persons who were in the program on that date." (*Ibid.*)

The expressed intent behind both Senate Bill 1128 and Proposition 83 was "to strengthen and improve the laws that punish and control sexual offenders." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 138.) This intent indicates neither the Legislature nor the voters intended to release those already committed under the SVPA. Indeed, petitioners do not advance a contrary intent. The additional indicia of intent present in *Baker, supra*, 35 Cal.3d 663, however, are absent here. Inexplicably, nothing in the text of Senate Bill 1128 or Proposition 83 makes mention of the effect of the amendments to the SVPA on those already committed under its provisions.

In considering whether there is sufficient indicia that, in enacting Senate Bill 1128 and passing Proposition 83, the Legislature and the voters intended to permit extended commitments for those already committed as sexually violent predators, we find *Sekt v. Justice's Court* (1945) 26 Cal.2d 297 [159 P.2d 17] (*Sekt*), certiorari denied (1945) 326 U.S. 756 [90 L.Ed. 454, 66 S.Ct. 96], instructive. In *Sekt*, the petitioner was charged by complaint with misdemeanor conspiracy and convicted. He petitioned for a writ of prohibition to restrain the justice's court from carrying into effect the judgment and sentence because, while his case was on appeal, the conspiracy statute was amended to change the offense from a misdemeanor to a wobbler. He contended that since there was no saving clause, all proceedings that were

not final were terminated. (26 Cal.2d at p. 299.) There was a general saving clause applicable to criminal cases, Government Code section 9608, but that section referred only to indictments and informations and the petitioner argued it did not apply to prosecutions by complaint. (26 Cal.2d at p. 302.) The court found authority that the term "information" included all misdemeanor prosecutions, but it found a "completely independent ground" to support punishing the petitioner under the law in effect when he committed his crime. (*Id.* at pp. 303–304.)

■ The court began its analysis with the general rule that outright repeal of a criminal statute without a saving clause bars prosecution for violations before the repeal. (*Sekt, supra,* 26 Cal.2d 297, 304.) This rule is based on the presumed legislative intent that a repeal is an implied pardon for past offenses. (*Ibid.*) The rule, however, "only applies in its full force where there is an outright repeal, and where there is no other new or old law under which the offender may be punished." (*Id.* at pp. 304–305.) Where the new statute mitigated punishment, violators would be punished under the new law. (*Id.* at p. 305.) Where a statute was repealed and a new statute enacted without substantive change, it was presumed the Legislature intended only clarification and not to affect the continuous operation of the law, even in the absence of a saving clause. (*Id.* at p. 306.)

■ The court then turned to the situation at issue, where the new law increased the punishment. (*Sekt, supra,* 26 Cal.2d at p. 307.) "There is substantial and well-reasoned authority to the effect that where the later statute increases the punishment the Legislature has clearly demonstrated its intent that the act should be punished, and since the offender cannot be punished under the new law because of the *ex post facto* provision of the Constitution, he will be held under the old law. It is presumed from the very purpose of the amendment that the Legislature intended that all offenders should be punished, and a saving clause is implied. [Citations.]" (*Id.* at pp. 307–308.) The court reasoned that whether the old law had been repealed or saved depended on legislative intent and by increasing the punishment the Legislature clearly intended such offense be punished. "In such a case, where the Legislature has seen fit to increase the punishment, it certainly cannot be argued that it intended to pardon and forgive those who had violated the less drastic statute. In such a situation the only reasonable assumption is that the Legislature intended the new punishment to be prospective in its operation and to apply only to offenses committed after its passage, but that the old law should apply to offenses committed before the effective date of the amendment." (*Id.* at pp. 308–309.) "To hold in such a case that by such an amendment increasing the possible punishment the Legislature intended to pardon and to forgive all offenses committed before the amendment where prosecutions were pending at the date of the amendment is to ascribe to the Legislature an intent that the very purpose of the amendment demonstrates

could not have existed. . . . The very nature of the situation compels the conclusion that the Legislature must have intended that the amendment should operate prospectively, and that as to past offenders they should be punished under the old law. To imply a saving clause in such a situation is simply to give effect to the obvious intent of the Legislature." (*Id.* at pp. 309–310.)

■ Here, unlike in *Baker, supra,* 35 Cal.3d 663, the provisions for civil commitment of certain sex offenders were not repealed; involuntary commitments under the SVPA are to continue. Under the new law, now Proposition 83, the term of commitment is an indeterminate period of commitment in place of renewable two-year commitments. The purpose of the change was "to protect the civil rights of those persons committed as a sexually violent predator while at the same time protect society and the system from unnecessary or frivolous jury trial actions where there is no competent evidence to suggest a change in the committed person." (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.) The change also served to reduce costs for SVP evaluations and court testimony. (*Id.,* analysis of Prop. 83 by Legis. Analyst, p. 45.) After Proposition 83, once a person is committed as an SVP, he remains in custody until he successfully bears the burden of proving he is no longer an SVP or the Department of Mental Health determines he no longer meets the definition of an SVP. (See Welf. & Inst. Code, §§ 6605, 6608, subd. (i).) The People no longer have to prove the person is an SVP to extend the commitment. The effect of the amendment, therefore, is to make it easier to keep one adjudicated an SVP committed and in custody. This change is in keeping with the general intent of Proposition 83 "to strengthen and improve the laws that punish and control sexual offenders." (Voter Information Guide, Gen. Elec., *supra,* text of Prop. 83, p. 138.)

■ By providing for indeterminate terms of commitment, it cannot reasonably be concluded that the voters, by passing Proposition 83, or the Legislature in enacting Senate Bill 1128, intended to release those previously committed as SVP's. Indeed, such a conclusion would "ascribe to the Legislature [and voters] an intent that the very purpose of the amendment demonstrates could not have existed." (*Sekt, supra,* 26 Cal.2d at p. 309.) The very nature of Senate Bill 1128 and Proposition 83, to strengthen punishment and control of sexual offenders, compels the conclusion that the Legislature and the voters must have intended that the new law should operate prospectively and that those previously found to be SVP's should remain subject to the provisions for extended commitments under the old law. "To imply a saving clause in such a situation is simply to give effect to the obvious intent of the Legislature [and voters]." (26 Cal.2d at p. 310.)

 " 'The fundamental purpose of statutory construction is to ascertain the intent of the lawmakers so as to effectuate the purpose of the law.' " (*People v. Thomas* (1992) 4 Cal.4th 206, 210 [14 Cal.Rptr.2d 174, 841 P.2d 159].) Having ascertained the intent of the Legislature and the voters was to continue and strengthen the provisions for commitment of those found to be SVP's, we find an implied saving clause to permit proceedings to extend commitments. The superior court has jurisdiction to proceed on the petitions.

## II

Petitioners contend that if the court has jurisdiction to proceed on the petitions to extend their commitments, their commitments can only be extended by two years, not the indeterminate period provided for in Proposition 83. They argue that applying the indeterminate commitment provisions of Proposition 83 would be an impermissible retroactive application.

The Attorney General contends that applying the amendments of Proposition 83 to petitioners, if they are in the future determined to be SVP's, is not a retroactive application of the law.[3] The Attorney General has the better argument.

 "It is well settled that a new statute is presumed to operate prospectively absent an express declaration of retrospectivity or a clear indication that the electorate, or the Legislature, intended otherwise. [Citations.]" (*Tapia v. Superior Court* (1991) 53 Cal.3d 282, 287 [279 Cal.Rptr. 592, 807 P.2d 434].) Proposition 83 is entirely silent on the question of retroactivity, so we presume it is intended to operate only prospectively. The question is whether applying its provisions to pending petitions to extend commitment is a prospective application.

 "In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was *completed* before the law's effective date. [Citations.] Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date. [Citations.] A law is not retroactive 'merely because some of the facts or conditions upon which its

---

[3] At oral argument, the Attorney General clarified the People's position that petitioners must be found to be SVP's, with the burden of proof on the People, under a petition to extend commitment. Previous two-year commitments are not converted to indeterminate terms of commitment. The effect of Proposition 83 is that any new commitment will be for an indeterminate term.

application depends came into existence prior to its enactment.' [Citation.]" (*People v. Grant* (1999) 20 Cal.4th 150, 157 [83 Cal.Rptr.2d 295, 973 P.2d 72], original italics.)

In determining whether someone is an SVP, the last event necessary is the person's mental state at the time of the commitment. For pending petitions, the person's mental state will be determined after the passage of Proposition 83, at the time of commitment. While past qualifying sex crimes are used as evidence in determining whether the person is an SVP, a person cannot be so adjudged "unless he 'currently' suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior, and which 'makes' him dangerous and 'likely' to reoffend. [Citation.]" (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1162 [81 Cal.Rptr.2d 492, 969 P.2d 584].) "[T]he statute clearly requires the trier of fact to find that an SVP is dangerous *at the time of commitment*." (*Ibid.*, italics added.)

The requirement that a commitment under the SVPA be based on a currently diagnosed mental disorder applies to proceedings to extend a commitment. Such proceedings are not a review hearing or a continuation of an earlier proceeding. (*People v. Munoz* (2005) 129 Cal.App.4th 421, 429 [28 Cal.Rptr.3d 295].) Rather, an extension hearing is a new and independent proceeding at which the petitioner must prove the person meets the criteria of an SVP. (*Ibid.*) The petitioner must prove the person is an SVP, not that the person is *still* one.[4] (129 Cal.App.4th at p. 430.) "[E]ach recommitment requires petitioner independently to prove that the defendant has a currently diagnosed mental disorder making him or her a danger. The task is not simply to judge changes in the defendant's mental state." (*Ibid.*)

Because a proceeding to extend commitment under the SVPA focuses on the person's current mental state, applying the indeterminate term of commitment of Proposition 83 does not attach new legal consequences to conduct that was completed before the effective date of the law. (*People v. Grant, supra*, 20 Cal.4th at p. 157.) Applying Proposition 83 to pending petitions to extend commitment under the SVPA to make any future extended commitment for an indeterminate term is not a retroactive application.

---

[4] We recognize that under Proposition 83, once a person is determined to be an SVP, he then bears the burden to prove he is no longer one (Welf. & Inst. Code, § 6608, subd. (i)), unless the Department of Mental Health determines he no longer meets the definition of an SVP. (See Welf. & Inst. Code, § 6605.) Based on the Attorney General's representation (see fn. 3, *ante*), that the People will bear the burden of proof on petitions to extend the commitments of SVP's committed before the passage of Senate Bill 1128 or Proposition 83, the prior law on extended commitments applies to them.

## DISPOSITION

The petition for a writ of mandate or prohibition is denied. The alternative writ and the stay of proceedings, having served their purposes, are discharged.

Sims, Acting P. J., and Cantil-Sakauye, J., concurred.

Petitioners' petition for review by the Supreme Court was denied February 27, 2008, S159426. George, C. J., and Corrigan, J., did not participate therein.