**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

<table>
<tr>
<td>
TIMOTHY J. SEEBOTH,<br>
     *Petitioner-Appellant*,<br>
<br>
    v.<br>
<br>
CLIFF ALLENBY, Director D.M.H.;<br>
AUDREY KING,<br>
     *Respondents-Appellees*.
</td>
<td>
No. 12-17062<br>
<br>
D.C. No.<br>
2:10-cv-02875-<br>
MCE-TJB<br>
<br>
<br>
OPINION
</td>
</tr>
</table>

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, Jr., Chief District Judge, Presiding

Argued and Submitted
April 14, 2015—San Francisco, California

Filed June 18, 2015

Before:  Alex Kozinski and Susan P. Graber, Circuit
Judges, and Michael A. Ponsor,[*] Senior District Judge.

Opinion by Judge Graber

---

[*] The Honorable Michael A. Ponsor, Senior United States District Judge for the District of Massachusetts, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of a habeas corpus petition asserting that the absence of a provision in California's Sexually Violent Predator Act (SVPA) setting forth a time within which to hold a trial extending the term of commitment is facially unconstitutional.

The petitioner claimed that the lack of a timing provision for sexually violent predators (SVPs) violates the Equal Protection Clause of the Fourteenth Amendment because, under California law, other civilly committed persons – mentally disordered offenders and individuals found not guilty by reason of insanity – have a statutory right to a recommitment trial within a specified period. The state courts held that SVPs are not similarly situated to mentally disordered offenders and individuals found not guilty by reason of insanity for the purpose of challenging the lack of a timing provision in the SVPA.

Reviewing under the Antiterrorism and Effective Death Penalty Act of 1996, the panel did not need to resolve the question of whether a citation by the California Supreme Court to *People v. Duvall (In re Duvall)*, 886 P.2d 1252 (Cal. 1995), constitutes a reasoned decision, and in turn did not need to decide which state court issued the last reasoned decision, because the California Supreme Court and Superior

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

Court decisions in this case share common reasoning that does not apply federal law unreasonably.

The panel held that state courts may reasonably apply the rational basis test when considering equal protection challenges to civil commitment laws.

The panel held that with respect to the procedural steps in the civil commitment process that are at issue here, the state courts reasonably concluded that the state legislature had a rational reason to distinguish between individuals who have been found to be mentally ill and dangerous and individuals who have been found to be mentally ill and *sexually* dangerous. The panel therefore concluded that it was not objectively unreasonable for the state courts to hold that the lack of a timing provision in the SVPA does not deprive SVPs of equal protection of the laws, and that the California courts did not contravene clearly established federal law.

## COUNSEL

Michael B. Bigelow (argued), Sacramento, California, for Petitioner-Appellant.

Tami M. Krenzin (argued), Deputy Attorney General, Kamala D. Harris, Attorney General of California, Michael P. Farrell, Senior Assistant Attorney General, and Brian G. Smiley, Supervising Deputy Attorney General, Sacramento, California, for Respondents-Appellees.

**OPINION**

GRABER, Circuit Judge:

In this habeas case, Petitioner Timothy Seeboth claims that California's Sexually Violent Predator Act ("SVPA"), Cal. Welf. & Inst. Code §§ 6600–6609.3, is unconstitutional on its face. Specifically, he asserts that the absence of a provision setting forth a time within which to hold a trial extending the term of his commitment denies him equal protection of the laws because, under California law, other civilly committed persons have a statutory right to a recommitment trial within a specified period. The state courts and the district court denied relief. Because the California state courts reasonably held that this aspect of the SVPA does not deprive Petitioner of equal protection of the laws, we affirm.

FACTS AND PROCEDURAL HISTORY

A. *The SVPA and Other California Civil Commitment Laws*

California has enacted a set of civil commitment statutes that are triggered only after criminal charges have been filed. *Hubbart v. Superior Court*, 969 P.2d 584, 587 (Cal. 1999). The SVPA, which is one such statute, reflects the California legislature's "concern over a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes." *Id.* The state may file a petition to civilly commit a person as a sexually violent predator ("SVP") if that individual (1) has been convicted of a

sexually violent offense against one or more victims and (2) suffers from a diagnosed mental disorder that makes it likely that he or she will engage in sexually violent criminal behavior in the future.[1] Cal. Welf. & Inst. Code § 6600(a)(1). The SVPA then provides for a probable cause hearing and a jury trial, at which the state must prove beyond a reasonable doubt that the individual meets those criteria. *Id.* §§ 6602–6603; *People v. McKee*, 223 P.3d 566, 574–75 (Cal. 2010).

In its original form, the SVPA provided for commitment for two-year terms. *Orozco v. Superior Court*, 11 Cal. Rptr. 3d 573, 578 (Ct. App. 2004). At the end of each term, and after a new trial, the individual could be recommitted. *Id.* at 578–79. In November 2006, California adopted Proposition 83, which "changed the commitment term for SVPs from renewable two-year periods to an indeterminate period." *Seeboth v. Mayberg*, 659 F.3d 945, 947 (9th Cir. 2011). Thus, for individuals committed or recommitted after 2006, there is no need for future recommitment proceedings. *See Bourquez v. Superior Court*, 68 Cal. Rptr. 3d 142, 144 (Ct. App. 2007) (holding that pending petitions for two-year extensions would be considered petitions for indefinite terms). Proposition 83 also changed the substantive requirements for civil commitment under the SVPA. Before 2006, the SVPA authorized civil commitment only if the person had been convicted of sexually violent offenses against two or more victims. Cal. Welf. & Inst. Code

---

[1] The state may file a commitment petition under the SVPA only while the individual is in custody pursuant to a determinate prison term, as a result of a parole revocation term, or under a special SVPA "hold" that temporarily extends a term of imprisonment or parole. Cal. Welf. & Inst. Code § 6601(a)(2).

§ 6600(a) (1996).  After Proposition 83, only one victim was required.  2006 Cal. Legis. Serv. Prop. 83 (West).

An individual also may be committed as a mentally disordered offender ("MDO").  To be committed as an MDO, a person must (1) stand convicted of a crime involving force, violence, or serious bodily injury; and (2) have a severe mental disorder that was a cause of, or an aggravating factor in, the commission of that crime.  Cal. Penal Code § 2962; *People v. Collins*, 12 Cal. Rptr. 2d 768, 770 (Ct. App. 1992).

Finally, California law authorizes the civil commitment of an individual who has been found not guilty by reason of insanity ("NGI").  In California, the question of sanity is determined separately, after a conviction.  Cal. Penal Code § 1026(a); *In re Moye*, 584 P.2d 1097, 1100 (Cal. 1978).  If the individual was insane at the time of the offense and has not regained sanity, the court may commit the person for up to the maximum term of the sentence that could have been imposed for the crime.  *Moye*, 584 P.2d at 1100.  Civil commitment may extend beyond the period of that maximum sentence if (1) the person was convicted of a felony and (2) the person represents a substantial danger of physical harm to others by reason of a mental disease, defect, or disorder.  Cal. Penal Code § 1026(b)(1).

B.  *Facts and Procedural History in This Case*

Over the course of more than 30 years, [Petitioner] was convicted nine times for crimes involving deviant sexual acts with children.  Based on his convictions, [Petitioner] was first determined to be a sexually violent predator ("SVP") in 1997 in

> a civil jury trial proceeding. He was held for consecutive two-year terms from 1997 until 2005 . . . . While [Petitioner] was still in custody for the 2003–05 term, the California District Attorney filed a petition in May 2005 to extend [Petitioner]'s commitment from the end of that 2003–05 term.

*Seeboth*, 659 F.3d at 946 (citations and footnotes omitted). Petitioner's trial for the 2005 recommitment petition did not take place until September 2010. He currently is in custody because that proceeding resulted in an order committing him for an indefinite term. *Id.* at 947.

In this appeal, Petitioner argues that the SVPA is facially unconstitutional because it fails to establish a time period within which a recommitment trial must occur.[2] Petitioner claims that the lack of a timing provision violates the Equal Protection Clause of the Fourteenth Amendment because there is a timing provision in the civil commitment laws that apply to MDOs and NGIs. *See* Cal. Penal Code § 1026.5(b)(4) (providing that an NGI has a right to a trial that commences "no later than 30 calendar days prior to the time the person would otherwise have been released, unless that time is waived by the person or unless good cause is shown"); *id.* § 2972(a) (same for MDOs).

Petitioner filed a state habeas petition in the Sacramento County Superior Court ("Superior Court") asserting, among other claims, that the absence of a timing provision in the SVPA violated his equal protection rights under the federal and state constitutions. The Superior Court denied his equal

---

[2] For simplicity, we refer to such a provision as a "timing provision."

protection claim on the merits, holding in part: "Petitioner has not shown that he is similarly situated to the other types of long-term civil commitments." Petitioner next filed a state habeas petition in the California Court of Appeal, which denied the petition without an opinion. Finally, after filing further petitions in Superior Court and the Court of Appeal, Petitioner filed a state habeas petition in the California Supreme Court. The California Supreme Court denied the petition, citing *People v. Duvall (In re Duvall)*, 886 P.2d 1252, 1258 (Cal. 1995), without a narrative explanation.

Petitioner filed a petition for writ of habeas corpus under 28 U.S.C. § 2254. The district court denied the petition, holding that the state courts' rejection of the equal protection claim "cannot be said to have been an unreasonable application of clearly established federal law." Petitioner timely appeals.

## DISCUSSION

We review de novo the district court's denial of habeas relief. *Juan H. v. Allen*, 408 F.3d 1262, 1269 n.7 (9th Cir. 2005). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we may not grant habeas relief

> with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Under this deferential standard, we may grant relief only if the state court's decision was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000).

A. *Identifying the State Court Decision Under Review*

Our recent decision in *Curiel v. Miller*, 780 F.3d 1201, 1203–04 (9th Cir. 2015), causes us to question which state court decision is the "last reasoned decision" that we must review. *Curiel* suggests that a citation to *Duvall* alone might not constitute sufficient "reasoning" to make the California Supreme Court's order more than a summary denial. *See id.* at 1204–05. We have held that, when a state's highest court summarily denies a habeas petition, we "look through" that denial to the "last reasoned state-court decision," *Cannedy v. Adams*, 706 F.3d 1148, 1158 (9th Cir.), *as amended on denial of rehearing*, 733 F.3d 794 (9th Cir. 2013), *cert. denied*, 134 S. Ct. 1001 (2014), which in this case is the California Superior Court's order. But we need not resolve the question whether a citation to *Duvall* constitutes a reasoned decision because the California Supreme Court and Superior Court decisions share common reasoning that does not apply federal law unreasonably.

It is undisputed that the Superior Court reached the merits of Petitioner's claim, which the court discussed at some length. Petitioner argues, however, that the California Supreme Court dismissed on a procedural ground. If that were so, then we would review Petitioner's claims de novo,

in light of the state's failure to raise procedural default. But, in the particular context of this case, we hold that the California Supreme Court's citation to *Duvall* signals that it, too, reached the merits. The page of *Duvall* cited by the California Supreme Court discusses both procedural and substantive requirements for habeas petitioners, including the requirement to plead facts sufficient to state a claim. 886 P.2d at 1258. Petitioner brought a *facial* challenge to the SVPA, which did not require him to allege any facts about his situation beyond the undisputed and properly pleaded fact that he had been civilly committed as an SVP. Thus, in context, a procedural ruling would not have made sense. Accordingly, we interpret the citation to *Duvall* to mean that the California Supreme Court understood Petitioner's equal protection claim, but determined that it lacked merit. *See Chambers v. McDaniel*, 549 F.3d 1191, 1197 (9th Cir. 2008) (holding that, "unless a court expressly (not implicitly) states that it is relying upon a procedural bar, we must construe an ambiguous state court response as acting on the merits of a claim, if such a construction is plausible").**[3]**

---

**[3]** Petitioner contends that we previously have held that an otherwise unexplained citation to *Duvall* signifies that the state court denied relief on a procedural ground. But the cases that Petitioner cites did not interpret a freestanding citation to *Duvall*; they interpreted a citation to *Duvall* alongside a citation to *Ex Parte Swain*, 209 P.2d 793, 796 (Cal. 1949). We have held that citation to *Duvall* and *Swain together* constitutes "dismissal without prejudice, with leave to amend to plead required facts with particularity." *Cross v. Sisto*, 676 F.3d 1172, 1177 (9th Cir. 2012); *accord Gaston v. Palmer*, 417 F.3d 1030, 1039 (9th Cir. 2005); *King v. Roe*, 340 F.3d 821, 823 (9th Cir. 2003) (per curiam), *abrogated in part on other grounds as recognized in Waldrip v. Hall*, 548 F.3d 729, 733 (9th Cir. 2008). The citations to *Swain* carry particular weight because the *Swain* court discussed the pleading standard and then dismissed the habeas petition *without prejudice*. 209 P.2d at 796; *Cross*, 676 F.3d at 1176. We are not required to interpret a citation to *Duvall*

The Superior Court held that Petitioner had failed to show that SVPs are "similarly situated" to MDOs and NGIs. The California Supreme Court's broader determination that there was no merit to Petitioner's equal protection challenge encompasses that ruling. Because we hold that the state courts reasonably reached that common conclusion, we need not and do not decide which state court issued the "last reasoned decision." *Barker*, 423 F.3d at 1091. The result is the same whichever decision we review.

### B. *Equal Protection Analysis*

The Fourteenth Amendment prohibits a state from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The Equal Protection Clause does not require identical treatment; rather, it "guarantees that the government will not classify individuals on the basis of impermissible criteria." *Coal. for Econ. Equity v. Wilson*, 122 F.3d 692, 702 (9th Cir. 1997). Because "legislative classifications as a general rule are presumptively valid under the Equal Protection Clause," we ordinarily must uphold a legislative classification if it is "'rationally related to a legitimate state interest.'" *Id.* (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 440 (1985)).

Certain exceptions to that general rule trigger heightened judicial scrutiny. If the classification targets a suspect class or burdens the exercise of a fundamental right, we apply strict scrutiny and ask whether the statute is narrowly tailored to serve a compelling governmental interest. *Wright v. Incline*

alone in the same way that we would interpret citations to both *Duvall* and *Swain*.

*Vill. Gen. Improvement Dist.*, 665 F.3d 1128, 1141 (9th Cir. 2011). If a law discriminates against a quasi-suspect class, it is subject to intermediate scrutiny; to survive a constitutional challenge, such discrimination must substantially relate to an important governmental objective. *Latta v. Otter*, 771 F.3d 456, 479–80 (9th Cir. 2014), *petitions for cert. filed*, 83 U.S.L.W. 3589 (U.S. Dec. 30, 2014) (No. 14-765), (U.S. Jan. 2, 2015) (No. 14-788), *and* (U.S. Apr. 9, 2015) (No. 14-1214).

Petitioner concedes that the SVPA does not discriminate against a suspect or quasi-suspect class. He contends nevertheless that the state courts were bound to employ heightened scrutiny because civil commitment burdens a fundamental right. It is true that we have suggested, without deciding, that "the rational basis test with a sharper focus" may apply to civil commitment laws. *Hickey v. Morris*, 722 F.2d 543, 546 (9th Cir. 1984) (internal quotation marks omitted). But because we are reviewing the state courts' decision under AEDPA, the question is not what test we would use were we reviewing de novo, but what "clearly established" United States Supreme Court precedent the state courts were bound to apply. *Williams*, 529 U.S. at 412. Although the Supreme Court has characterized civil commitment as a "significant deprivation of liberty," *Addington v. Texas*, 441 U.S. 418, 425 (1979), it also has examined challenges to civil commitment statutes using rational basis review, *see Baxstrom v. Herold*, 383 U.S. 107, 111–12 (1966) (holding that the petitioner was deprived of equal protection of the laws because "there [was] no conceivable basis" for the statutory distinction between two different groups of mentally ill individuals). The Court has never specified clearly what standard of review applies. *United States v. Sahhar*, 917 F.2d 1197, 1201 (9th Cir. 1990);

*cf. Foucha v. Louisiana*, 504 U.S. 71, 116 (1992) (Thomas, J., dissenting) (criticizing the majority's analysis of a due process challenge to a civil commitment statute because, "[f]irst, the Court never explains whether we are dealing here with a fundamental right, and . . . [s]econd, the Court never discloses what standard of review applies"). Accordingly, state courts reasonably may apply the rational basis test when considering equal protection challenges to civil commitment laws.[4]

The state courts held that SVPs are not similarly situated to MDOs and NGIs for the purpose of challenging the lack of a timing provision in the SVPA. That holding amounts to a determination that the state has a constitutionally sufficient reason for treating the groups differently. *See City of Cleburne*, 473 U.S. at 439 ("The Equal Protection Clause . . . essentially . . . direct[s] that all persons similarly situated should be treated alike."). The state courts did not specify which level of scrutiny they applied in adjudicating Petitioner's claim.[5] But because the courts reasonably could

---

[4] Indeed, most federal appellate courts that have addressed the appropriate standard of review for equal protection challenges to civil commitment statutes have held that rational basis review applies. *United States v. Timms*, 664 F.3d 436, 446–47 (4th Cir. 2012); *United States v. Carta*, 592 F.3d 34, 44 (1st Cir. 2010); *Varner v. Monohan*, 460 F.3d 861, 865 (7th Cir. 2006); *United States v. Weed*, 389 F.3d 1060, 1071 (10th Cir. 2004). *But see Francis S. v. Stone*, 221 F.3d 100, 111–12 (2d Cir. 2000) (concluding that "[s]ome form of intermediate level scrutiny" applies).

[5] Petitioner argues that the state courts had to apply strict scrutiny because the California Supreme Court has held that procedural provisions of the SVPA are subject to strict scrutiny. *People v. McKee*, 223 P.3d 566, 588 (Cal. 2010). But the California Supreme Court's decision in *McKee* does not change our evaluation on habeas review, for two reasons. First, our inquiry is whether the state court unreasonably applied clearly

have used the rational basis standard, we cannot grant habeas relief unless Petitioner shows that it was objectively unreasonable to conclude, *Williams*, 529 U.S. at 409, that there was a rational relationship between the differential treatment and a legitimate governmental purpose, *Coal. for Econ. Equity*, 122 F.3d at 702. He cannot carry that heavy burden.

The state's interest in preventing violent crime is more than legitimate; it is compelling. *United States v. Salerno*, 481 U.S. 739, 749 (1987). The narrower question is whether it was objectively unreasonable for the state courts to hold that the state legislature had a rational reason to distinguish between individuals who have been found to be mentally ill and dangerous (MDOs and NGIs) and individuals who have been found to be mentally ill and *sexually* dangerous (SVPs). With respect to the procedural steps in the civil recommitment process that are at issue here, the state court reasonably concluded that California may make such a distinction. *See Thielman v. Leean*, 282 F.3d 478, 485 (7th Cir. 2002) ("[I]t is not unreasonable for the State to believe that a person with a mental disorder of a sexual nature is qualitatively more dangerous than another mental patient who nonetheless threatens danger to himself or others."); *see also Kansas v. Hendricks*, 521 U.S. 346, 364–65 (1997)

established *federal* law. 28 U.S.C. § 2254(d)(1). A state court decision cannot change the content of that law. *Williams*, 529 U.S. at 412. Second, *McKee* could not have bound the state court to apply a particular level of scrutiny here, even if its holding were otherwise relevant, because it issued nine months after the California Supreme Court denied relief in Petitioner's case. *See Williams*, 529 U.S. at 390 (stating that, under AEDPA, a habeas petitioner may challenge a state court's application of a rule of law only if that rule was "clearly established at the time [the] state-court conviction became final").

(upholding Kansas' civil commitment law for sexually violent predators against a due process challenge, in part because the law applied to a "narrow class of particularly dangerous individuals").

Petitioner argues that the state's sole justification for treating SVPs differently from other violent offenders who are civilly committed is that sexually violent offenders have a higher recividism rate than do other violent offenders. He claims that insufficient data support that assertion. But even assuming equal rates of recidivism, it is not unreasonable to conclude, as the Seventh Circuit has, that a state rationally may decide that sexually violent crime is qualitatively more dangerous than other kinds of violent crime. *Thielman*, 282 F.3d at 485; *cf. ACLU of Nev. v. Masto*, 670 F.3d 1046, 1057 (9th Cir. 2012) (holding that, even in the absence of evidence of a higher recidivism rate for sex offenders, there is a "legitimate public safety interest in monitoring sex-offender presence in the community").

Moreover, the nature of the crime is not the only difference between SVPs, on the one hand, and MDOs and NGIs, on the other. Unlike the MDO statute or the NGI statute, the version of the SVPA in effect when Petitioner's recommitment was initiated required that the *particular* offender already had been convicted of sexually violent offenses against *at least two* victims. Cal. Welf. & Inst. Code § 6600(a) (2000). It was not unreasonable for the state courts to conclude that a state legislature rationally may decide that a person who has committed sexually violent offenses against more than one victim is more likely to recidivate than is a person who has been convicted of a single crime against a single victim or a single felony that need not involve a direct victim.

Petitioner also argues that the state courts' denial of relief is an unreasonable application of *Baxstrom*, 383 U.S. 107. According to Petitioner, *Baxstrom* established that, in the arena of involuntary civil commitment, a state may not deny a right to one group of committed persons that it confers on another group of committed persons. *Baxstrom* did not sweep so broadly. The civil commitment law at issue in *Baxstrom* afforded the right to have a trial and a jury determination of sanity before a person could be civilly committed. *Id.* at 111. But a person nearing the end of a penal sentence had no such right and could be civilly committed without a jury trial. *Id.* at 110. The Supreme Court held that the state could not deny those nearing the end of a prison term "the jury review available to all other persons civilly committed" in the state. *Id.* *Baxstrom* did not address whether state laws could differentiate between sexually violent offenders and other violent offenders, nor did the Court consider less drastic procedural distinctions between groups. Here, all the allegedly similar groups receive trials before being civilly committed. The state court did not apply *Baxstrom* unreasonably.

It was not objectively unreasonable for the state courts to hold that the lack of a timing provision in the SVPA does not deprive SVPs of equal protection of the laws. We cannot say that the California courts contravened clearly established federal law. 28 U.S.C. § 2254(d)(1).

**AFFIRMED.**