163 Cal.App.4th 474 (2008)
THE PEOPLE, Plaintiff and Respondent,
v.
ROBERT JAMES RIFFEY, Defendant and Appellant.
No. C055649.
Court of Appeals of California, Third District, Placer.
May 28, 2008.
*479 Susan K. Keiser, under appointment by the Court of Appeal, for Defendant and Appellant.
Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Julie A. Hokans, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION
ROBIE, J.
Committed to the State Department of Mental Health (the department) for an indeterminate term as a sexually violent predator (SVP), defendant Robert James Riffey appeals. He contends the recent amendments to the Sexually Violent Predator Act (SVPA; Welf. & Inst. Code, § 6600 et seq.)[1] that provide for indeterminate commitments should not have been applied to him retroactively and are unconstitutional. We conclude the amended SVPA was not applied to defendant retroactively and his constitutional challenges are without merit. Accordingly, we will affirm the judgment.

*480 FACTUAL AND PROCEDURAL BACKGROUND
In August 2002, the Placer County District Attorney filed a petition to commit defendant to the department for two years as an SVP. In December 2002, defendant waived a probable cause hearing and the court bound him over for trial. Over the next four years, the matter was continued numerous times.
"On September 20, 2006, the Governor signed the Sex Offender Punishment, Control, and Containment Act of 2006, Senate Bill No. 1128 (2005-2006 Reg. Sess.) (Senate Bill 1128). (Stats. 2006, ch. 337.) Senate Bill 1128 was urgency legislation that went into effect immediately. (Stats. 2006, ch. 337, § 62.) Among other things, it amended provisions of the SVPA to provide the initial commitment set forth in Welfare and Institutions Code section 6604 was for an indeterminate term. (Stats. 2006, ch. 337, § 55.)" (Bourquez v. Superior Court (2007) 156 Cal.App.4th 1275, 1280-1281 [68 Cal.Rptr.3d 142].)
"At the November 7, 2006 General Election, the voters approved Proposition 83, an initiative measure. (Deering's Ann. Welf. & Inst. Code (2007 supp.) appen. foll. § 6604, p. 43.) Proposition 83 was known as `The Sexual Predator Punishment and Control Act: Jessica's Law.' (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, p. 127.) Among other things, Proposition 83 `requires that SVPs be committed by the court to a state mental hospital for an undetermined period of time rather than the renewable two-year commitment provided for under existing law.' (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) analysis of Prop. 83 by Legis. Analyst, p. 44.)" (Bourquez v. Superior Court, supra, 156 Cal.App.4th at p. 1281.)
In March 2007, the district attorney filed an amended petition to commit defendant as an SVP for an indeterminate term. The matter was tried in April 2007. In midtrial, defendant moved to dismiss the proceedings against him on the ground (among others) that "retroactive" application to him of the new SVPA provision allowing commitment for an indeterminate term would violate due process. The court denied the motion. The jury subsequently found defendant was an SVP, and the trial court committed him to the department for an indeterminate term. Defendant filed a timely notice of appeal.

*481 DISCUSSION

I

The SVPA
(1) The SVPA "allows for the involuntary commitment of certain convicted sex offenders, whose diagnosed mental disorders make them likely to reoffend if released at the end of their prison terms." (Cooley v. Superior Court (2002) 29 Cal.4th 228, 235 [127 Cal.Rptr.2d 177, 57 P.3d 654].) Under the version of the SVPA in effect before the enactment of Senate Bill No. 1128 (2005-2006 Reg. Sess.) and the passage of Proposition 83, if the government proved beyond a reasonable doubt in an initial commitment proceeding that a person was an SVP, then the court had to commit the person to the department for two years, and the person could not be kept in actual custody for longer than two years unless a new petition to extend the commitment was filed. (Former § 6604; Albertson v. Superior Court (2001) 25 Cal.4th 796, 802, fn. 6 [107 Cal.Rptr.2d 381, 23 P.3d 611]; Bourquez v. Superior Court, supra, 156 Cal.App.4th at p. 1280.) "The procedures for an initial commitment also appl[ied] to an extended commitment to the extent possible." (People v. Ward (2002) 97 Cal.App.4th 631, 634 [118 Cal.Rptr.2d 599].) Thus, to extend a person's commitment as an SVP, the government had to prove beyond a reasonable doubt that the person remained an SVP. The term of any extended commitment was two years from the end of the previous commitment. (Former § 6604.1, subd. (a).)
(2) In the wake of Senate Bill No. 1128 (2005-2006 Reg. Sess.) and Proposition 83, the SVPA still provides that in an initial commitment proceeding the government must prove beyond a reasonable doubt that the person whose commitment is sought is an SVP. (See § 6604.) Now, however, if the court or jury makes that finding, the court must commit the person to the department for an indeterminate term, rather than a two-year term. (Ibid.)
(3) Because the term of commitment is indeterminate, the government no longer has to prove at regular intervals, beyond a reasonable doubt, that the person remains an SVP. Instead, the department must examine the person's mental condition at least once a year and must report annually on whether the person remains an SVP. (§ 6605, subd. (a).) If the department determines the person is no longer an SVP, the director of the department must authorize the person to petition the court for unconditional discharge. (§ 6605, subd. (b).) If, on consideration of such a petition, the court finds probable cause to believe the person is no longer an SVP, the court must conduct a hearing, at which the government has to prove beyond a reasonable doubt that the person is still an SVP. (Id., subds. (c), (d).) If the government meets *482 that burden, the person must (once again) be committed for an indeterminate term. (Id., subd. (e).) If the government does not meet its burden, then the person must be discharged. (Ibid.)
(4) The only other avenue for release from confinement under the amended SVPA is a petition under section 6608. This statute remains substantially the same as before the enactment of Senate Bill No. 1128 (2005-2006 Reg. Sess.) and the passage of Proposition 83. Under this statute, a person committed as an SVP may petition for conditional release or unconditional discharge without the recommendation or concurrence of the director of the department. (§ 6608, subd. (a).) Such a petition may also be instituted by the director under section 6607. In any hearing under section 6608, however, the petitioner has the burden of proof by a preponderance of the evidence. (§ 6608, subd. (i).)
With these aspects of the law in mind, we turn to defendant's arguments on appeal.

II

Retroactive Application of the Law
Defendant first contends the trial court erred in retroactively applying the amended SVPA to his case.[2] He contends "[t]he requirements in Proposition 83 and SB 1128 that defendants serve indeterminate terms altered the legal consequences and liabilities for [his] acts and mental condition and thus, cannot be applied retrospectively."
(5) This court rejected a similar argument in Bourquez v. Superior Court, and we do so again here. "`In general, application of a law is retroactive only if it attaches new legal consequences to, or increases a party's liability for, an event, transaction, or conduct that was completed before the law's effective date. [Citations.] Thus, the critical question for determining retroactivity usually is whether the last act or event necessary to trigger application of the statute occurred before or after the statute's effective date. [Citations.] A law is not retroactive "merely because some of the facts or conditions upon which its application depends came into existence prior to its enactment."'" (Bourquez v. Superior Court, supra, 156 Cal.App.4th at pp. 1288-1289.)
*483 (6) "In determining whether someone is an SVP, the last event necessary is the person's mental state at the time of the commitment. For pending petitions, the person's mental state will be determined after the passage of Proposition 83, at the time of commitment. While past qualifying sex crimes are used as evidence in determining whether the person is an SVP, a person cannot be so adjudged `unless he "currently" suffers from a diagnosed mental disorder which prevents him from controlling sexually violent behavior, and which "makes" him dangerous and "likely" to reoffend.'" (Bourquez v. Superior Court, supra, 156 Cal.App.4th at p. 1289.)
(7) The Bourquez court concluded that "[b]ecause a proceeding to extend commitment under the SVPA focuses on the person's current mental state, applying the indeterminate term of commitment of Proposition 83 does not attach new legal consequences to conduct that was completed before the effective date of the law." (Bourquez v. Superior Court, supra, 156 Cal.App.4th at p. 1289.) The same conclusion applies with equal force to a proceeding, such as the one here, for an initial commitment under the SVPA. Here, the determination made at the initial commitment hearing in April 2007 was that defendant was an SVP at that time. In light of this fact, the court's application to defendant of the then current version of the SVPA, which called for an indeterminate term of commitment, was not a retroactive application of the law. Consequently, defendant's first argument fails.[3]

III

Ex Post Facto
Defendant contends the new requirement of commitment for an indeterminate term renders the SVPA punitive in nature and therefore the application of the amended SVPA to him violates the constitutional prohibitions against ex post facto laws. We disagree.
(8) "[T]he ex post facto clause prohibits only those laws which `retroactively alter the definition of crimes or increase the punishment for criminal acts.' [Citations.] The basic purpose of the clause is to ensure fair warning of the consequences of violating penal statutes, and to reduce the potential for vindictive legislation. [Citation.] (9) The federal and state ex post facto *484 clauses are interpreted identically." (Hubbart v. Superior Court (1999) 19 Cal.4th 1138, 1170-1171 [81 Cal.Rptr.2d 492, 969 P.2d 584].)
In Hubbart, the California Supreme Court rejected the argument that the version of the SVPA then in effect "impose[d] punishment or otherwise implicate[d] ex post facto concerns." (Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1179.) Defendant contends a different conclusion is now required in light of the changes made by Senate Bill No. 1128 (2005-2006 Reg. Sess.) and Proposition 83. He begins his argument with the intent clause in Proposition 83. That clause states that it is "`the intent of the People of the State of California in enacting this measure to strengthen and improve the laws that punish and control sexual offenders.'" (Bourquez v. Superior Court, supra, 156 Cal.App.4th at p. 1282, italics added.) In defendant's view, this statement "ma[kes] clear" "[t]hat the intent of Proposition 83 was punishment, rather than treatment."
(10) "The categorization of a particular proceeding as civil or criminal `is first of all a question of statutory construction.' [Citation.] We must initially ascertain whether the legislature meant the state to establish `civil' proceedings. If so, we ordinarily defer to the legislature's stated intent." (Kansas v. Hendricks (1997) 521 U.S. 346, 361 [138 L.Ed.2d 501, 514, 117 S.Ct. 2072].)
(11) In Hubbart, the California Supreme Court noted that in enacting the SVPA, "the Legislature disavowed any `punitive purpose[],' and declared its intent to establish `civil commitment' proceedings in order to provide `treatment' to mentally disordered individuals who cannot control sexually violent criminal behavior." (Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1171.) The court further noted that "[t]he Legislature also made clear that, despite their criminal record, persons eligible for commitment and treatment as SVP's are to be viewed `not as criminals, but as sick persons.'" (Ibid.) Based on these considerations and others, the court concluded that the Legislature "intended a nonpenal `civil commitment scheme designed to protect the public from harm.'" (Id. at p. 1172.)
The intent clause in Proposition 83 does not alter this conclusion or prove that the voters who passed that initiative measure intended punishment where the Legislature had previously intended only civil commitment. The reference in the intent clause to "strengthen[ing] and improv[ing] the laws that punish. . . sexual offenders" (italics added) was not meant to express the intent underlying the amendments Proposition 83 made to the SVPA. Rather, it was meant to express the intent underlying other provisions of Proposition 83, which amended various Penal Code statutes governing the punishment of sex crimes. This is made clear by section 2 of the initiative measure, "`FINDINGS AND DECLARATIONS,'" which states in relevant part as follows: *485 "`The People find and declare each of the following: [¶] . . . [¶] (h) California must also take additional steps to monitor sex offenders, to protect the public from them, and to provide adequate penalties for and safeguards against sex offenders, particularly those who prey on children. Existing laws that punish aggravated sexual assault, habitual sexual offenders, and child molesters must be strengthened and improved. In addition, existing laws that provide for the commitment and control of sexually violent predators must be strengthened and improved.'" (Historical and Statutory Notes, 47A West's Ann. Pen. Code (2008 supp.) foll. § 209, p. 462, italics added.)
(12) In short, when read in conjunction with the findings and declarations of Proposition 83, what the intent clause tells us is that the voters intended the amendments to the SVPA that were part of that initiative measure to strengthen and improve the laws that control sexual offenders, not the laws that punish them. Thus, the intent clause does not support defendant's argument that the purpose behind the amendments to the SVPA was punitive.
Notwithstanding the voters' stated intent, defendant argues "[t]he intent to punish is . . . evident from the scope of the reforms." This argument fails as well.
(13) "[A] party raising an ex post facto claim is not precluded from demonstrating that the statute is `"so punitive either in purpose or effect as to negate"' the stated intent." (Hubbart v. Superior Court, supra, 19 Cal.4th at p. 1172.) An appellate court will reject the stated intent, however, "only where a party challenging the statute provides `the clearest proof'" of the statute's punitive purpose or effect. (Kansas v. Hendricks, supra, 521 U.S. at p. 361 [138 L.Ed.2d at p. 515].)
Like the defendants in Hubbart and Hendricks, defendant here "has failed to satisfy this heavy burden." (Kansas v. Hendricks, supra, 521 U.S. at p. 361 [138 L.Ed.2d at p. 515].) Essentially defendant's argument is that because a person may now be committed for an indeterminate term, "without required periodic judicial review requiring the government to prove the detainee still meets the requirements for commitment," "a person could be retained in custody long past the duration of his mental illness." He contends "[a]n indeterminate term without meaningful judicial review is the type and severity of burden typically associated with punishment."
The fact that commitment under the amended SVPA is for an indeterminate term does not, by itself, render the statute punitive in purpose or effect. "Far from any punitive objective, the confinement's duration is instead linked to the stated purposes of the commitment, namely, to hold the person until his mental abnormality no longer causes him to be a threat to others." (Kansas v. *486 Hendricks, supra, 521 U.S. at p. 363 [138 L.Ed.2d at p. 516].) Moreover, defendant's assessment of the likelihood that a person will be "retained in custody long past the duration of his mental illness" appears based on the unstated (and unwarranted) assumption that the reviews conducted by the department of a committed person's mental condition, which must be conducted "at least once every year," will necessarily be biased in favor of the government. In effect, defendant implicitly posits that the department will keep him confined indefinitely by regularly concluding that his mental condition has not changed, even when it has.
There is no basis in the record for indulging in such speculation. Moreover, the amended SVPA contains a safety valve against such potential abuse, by allowing a person to petition for discharge without the concurrence or recommendation of the department. (§ 6608.) For various reasons, defendant considers this option inadequate as a matter of due processa point we will discuss further below. For now, however, it is sufficient to conclude that defendant has failed to identify any provision in the amended SVPA that makes it so punitive in purpose or effect as to negate the voters' stated intent,[4] which (as we have explained) was to strengthen and improve the laws that control sexual offenders, not to punish them. For this reason, defendant's ex post facto argument fails.[5]

IV

Due Process
(14) Defendant contends his indeterminate commitment under the amended SVPA violates the due process clause of the Fourteenth Amendment to the United States Constitution because there is no longer any provision for automatic periodic hearings to determine the propriety of continued commitment and because the SVPA now improperly places the burden on him to prove he should be released. We disagree.
"Because civil commitment involves a significant deprivation of liberty, a defendant in an SVP proceeding is entitled to due process protections. *487 [Citation.] A defendant challenging the statute on due process grounds carries a heavy burden. Courts have a `"duty to uphold a statute unless its unconstitutionality clearly, positively, and unmistakably appears; all presumptions and intendments favor its validity."'" (People v. Otto (2001) 26 Cal.4th 200, 209-210 [109 Cal.Rptr.2d 327, 26 P.3d 1061].)
Defendant contends the lack of automatic periodic commitment hearings to determine if the committed person remains an SVP violates his right to due process because "[a]bsent such proceedings, there is no mechanism in place to insure that a person will not continue to be detained beyond the period which is legally justified." As we have noted, however, the department is bound to review a committed person's mental condition at least annually and must authorize that person to file a petition for discharge if the department determines he is no longer an SVP. Moreover, a person can petition for discharge without the concurrence or recommendation of the department.
Defendant contends the first option is inadequate for due process purposes because the department "is not a neutral and disinterested arbiter. . . . The [department] is the State, and simply cannot be entrusted to provide SVP's with the only meaningful opportunity for judicial review of their commitments."
As we noted in discussing defendant's ex post facto argument, there is no basis in the record for speculating that the department will not fairly assess the mental condition of a person committed as an SVP when called on to do so. Moreover, section 6608 provides a safety valve from any potential abuse by allowing a person to petition for discharge without the concurrence or recommendation of the department.
Defendant contends the procedural rights provided by section 6608 "are essentially meaningless" because (1) that statute "does not provide for the appointment of a defense expert for indigent detainees"; and (2) "the burden of proving fitness for release is allocated to" the committed person.
Addressing the latter issue first, we perceive no fundamental unfairness in allocating the burden of proof to the committed person in a hearing on a petition for discharge that is filed without a prior determination by the department that the person is no longer an SVP. The adjudication that results in the initial commitment establishes, beyond a reasonable doubt, that the person is an SVP and therefore a proper candidate for civil commitment under the SVPA. It is not unfair or unreasonable to give that adjudication preclusive effect, absent proof of some change in the committed person's mental condition. Moreover, where the committed person is the one asserting that change, contrary to the extant determination of the department, it is not *488 unfair or unreasonable to require the committed person to carry the burden of proving his or her own assertion.
To the extent defendant relies on Foucha v. Louisiana (1992) 504 U.S. 71 [118 L.Ed.2d 437, 112 S.Ct. 1780] to support his argument that the due process clause forbids placing the burden of proof on the confined person, that reliance is misplaced. Foucha involved the issue of whether "a person acquitted by reason of insanity [could] be committed to a mental institution until he is able to demonstrate that he is not dangerous to himself and others, even though he does not suffer from any mental illness." (504 U.S. at p. 73 [118 L.Ed.2d at p. 444].) In Foucha, a review panel at the institution of confinement determined that "there had been no evidence of mental illness since [Foucha's] admission . . . ." (Id. at p. 74 [118 L.Ed.2d at p. 444].) Nonetheless, the state continued to confine Foucha based on the determination that he was dangerous to himself and others. (Id. at p. 75 [118 L.Ed.2d at p. 445].) In concluding that this violated due process, the United States Supreme Court commented that Foucha was "not now entitled to an adversary hearing at which the State must prove by clear and convincing evidence that he is demonstrably dangerous to the community. Indeed, the State need prove nothing to justify continued detention, for the statute places the burden on the detainee to prove that he is not dangerous." (Id. at pp. 81-82 [118 L.Ed.2d at p. 449].)
This part of Foucha, on which defendant relies, does not advance his argument. The foundational problem in Foucha was that the state insisted on keeping Foucha confined even though everyone agreed he was not mentally ill. It was in this context that the United States Supreme Court found it objectionable for the state to absolve itself of any burden of proof and to require Foucha to prove he was not dangerous. That situation is in no way comparable to proceedings under section 6608 of the SVPA. When a confined person petitions for discharge under that statute on the ground he is no longer an SVP, it will necessarily be contrary to the initial adjudication and to the extant determination of the department that he is, and remains, an SVP. Nothing in Foucha suggests that due process forbids a state from imposing the burden of proof on the committed person in such circumstances.
(15) As for the fact that section 6608 does not expressly provide for the appointment of a defense expert for indigent detainees, that presents no due process problem because such a right is provided by section 6605. As we have noted, that statute requires the department to report on a committed SVP's mental condition annually. (§ 6605, subd. (a).) In conjunction with that requirement, the statute also provides that "[t]he person may retain, or if he or she is indigent and so requests, the court may appoint, a qualified expert or professional person to examine him or her, and the expert or professional *489 person shall have access to all records concerning the person." (Ibid., italics added.) Thus, if the department concludes in its annual report that the committed person remains an SVP, that person can request the appointment of his or her own expert to review that determination. If the appointed expert concludes otherwise, then the expert's testimony could be used to support a petition for discharge under section 6608.
For the foregoing reasons, we find no merit in defendant's assertion that his indeterminate commitment under the amended SVPA violates due process.[6]

V

Equal Protection
Defendant contends subjecting SVP's like him to the amended SVPA violates the equal protection clause of the Fourteenth Amendment because persons committed under the Mentally Disordered Offender (MDO) Act (Pen. Code, § 2960 et seq.) and persons committed because they were found not guilty by reason of insanity (NGI) (id., § 1026 et seq.) are not subject to indeterminate commitments and can more readily obtain judicial review of their commitments. We conclude no equal protection violation has been shown.
(16) "The constitutional guaranty of equal protection of the laws means simply that persons similarly situated with respect to the purpose of the law must be similarly treated under the law. [Citations.] If persons are not similarly situated for purposes of the law, an equal protection claim fails at the threshold. [Citation.] The question is not whether persons are similarly situated for all purposes, but `whether they are similarly situated for purposes of the law challenged.'" (People v. Buffington (1999) 74 Cal.App.4th 1149, 1155 [88 Cal.Rptr.2d 696].)
(17) "`Equal protection applies to ensure that persons similarly situated with respect to the legitimate purpose of the law receive like treatment; equal protection does not require identical treatment. [Citation.]' [Citation.] The state `may adopt more than one procedure for isolating, treating, and restraining dangerous persons; and differences will be upheld if justified. [Citations.] Variation of the length and conditions of confinement, depending on degrees *490 of danger reasonably perceived as to special classes of persons, is a valid exercise of power.'" (People v. Hubbart (2001) 88 Cal.App.4th 1202, 1217 [106 Cal.Rptr.2d 490].)
(18) "Strict scrutiny is the correct standard of review in California for disparate involuntary civil commitment schemes because liberty is a fundamental interest." (People v. Buffington, supra, 74 Cal.App.4th at p. 1156.)
We begin with defendant's comparison of the amended SVPA to the MDO Act. "The MDO Act and the SVPA are often compared for equal protection purposes because both deal with prisoners who have completed their sentences and who may be subject to involuntary confinement for mental health treatment." (People v. Buffington, supra, 74 Cal.App.4th at p. 1156, fn. 3.)
Defendant complains that while SVP's "are subject to indeterminate commitments with the SVP detainee having the burden of proving his fitness for relief unless the state elects to grant the SVP detainee permission to file a petition pursuant to section 6605," "commitments under the MDOA are for a period of one year" and "the MDOA grants the detainee the right to periodic judicial review and jury trial in which the state has the burden of proving beyond a reasonable doubt the need for continued treatment." In defendant's view, "[t]here is no compelling state interest" supporting this distinction.
The first question is whether persons committed under the SVPA are similarly situated to persons committed under the MDO Act for purposes of the laws governing the length of their commitments and how and under what conditions judicial review of their commitments can be obtained. Defendant does not address that question, arguing instead that SVP's and MDO's are similarly situated "for purpose of the equal protection clause." In other words, defendant appears to assert that SVP's and MDO's are similarly situated for purposes of any equal protection claim.
This assertion is erroneous. For example, in Buffington this court concluded that SVP's are similarly situated to MDO's for purposes of the laws defining the mental disorder necessary to detain them (People v. Buffington, supra, 74 Cal.App.4th at p. 1156), but are not similarly situated to MDO's for purposes of the laws relating to treatment (id. at pp. 1162-1164).
Defendant fails to offer any argument as to why SVP's are similarly situated to MDO's for purposes of the laws governing the length of their commitments and how and under what conditions judicial review of their commitments can be obtained. On the other hand, the People argue the two groups are not similarly situated because (1) commitment under the MDO Act "`is directly related to the crime for which the [MDO] was incarcerated'"; and (2) MDO's are more amenable to treatment than SVP's. We do *491 not see how the first difference bears any reasonable relationship to "how long they should be confined and treated and how review of their commitments should be secured." The second difference, however, is relevant. One court has noted that "the MDO law targets persons with severe mental disorders that may be kept in remission with treatment [citation], whereas the SVPA targets persons with mental disorders that may never be successfully treated [citation]." (People v. Hubbart, supra, 88 Cal.App.4th at p. 1222.) Moreover, as the People note, the voters who passed Proposition 83 "recognized that SVPs stand apart from other civil committees in their likelihood of reoffense and resistance to treatment." Subdivision (b) of the "`FINDINGS AND DECLARATIONS'" section of the initiative measure specifically notes that "`[s]ex offenders have very high recidivism rates. According to a 1998 report by the U.S. Department of Justice, sex offenders are the least likely to be cured and the most likely to reoffend . . . .'" (Historical and Statutory Notes, 47A West's Ann. Pen. Code, supra, foll. § 209, p. 462.)
(19) Given these differences between SVP's and MDO's, and in the absence of any argument from defendant on the point, we conclude that SVP's and MDO's are not similarly situated with regard to the laws governing the length of their commitments and how and under what conditions judicial review of their commitments can be obtained. Thus, "this equal protection challenge fails at the threshold."[7] (People v. Buffington, supra, 74 Cal.App.4th at p. 1162.)
We turn now to defendant's equal protection argument based on the different treatment of SVP's and NGI acquittees. A person committed to a state hospital following an NGI determination can apply for release on the ground sanity has been restored (Pen. Code, § 1026.2, subd. (a)), just like an SVP can petition for conditional release or unconditional discharge without the recommendation or concurrence of the director of the department under section 6608. Moreover, the NGI acquittee seeking release has the burden of proof by a preponderance of the evidence (Pen. Code, § 1026.2, subd. (k)), just like the SVP seeking release or discharge under section 6608 does (§ 6608, subd. (i)). Nonetheless, defendant complains of an equal protection violation because, unlike an SVP, an NGI acquittee has "the right to a hearing on a petition for release within 180 days following . . . initial commitment."
As an initial matter, defendant is mistaken about the relevant time period. If an NGI acquittee applies for release on the ground his or her sanity has been restored, no hearing can be held on that application "until the person committed has been confined or placed on outpatient status for a period of *492 not less than 180 days from the date of the order of commitment." (Pen. Code, § 1026.2, subd. (d).) Thus, an NGI acquittee does not have a right to a hearing "within 180 days" as defendant contends.
That leaves us with defendant's complaint that an NGI acquittee has "the right to a hearing" on his or her application for release. (See People v. Soiu (2003) 106 Cal.App.4th 1191, 1196 [131 Cal.Rptr.2d 421].) Defendant contrasts this with section 6608 of the SVPA, which provides that the trial court canand indeed mustdeny a petition for release or discharge without a hearing if the court determines the petition is based on frivolous grounds. (§ 6608, subd. (a).) Defendant contends "[t]here is no compelling state interest which justifie[s] such differential treatment between individuals committed as NGI acquittees and SVP defendants."
(20) As with MDO's, however, defendant has failed to show that NGI acquittees are similarly situated to SVP's for purposes of the laws governing how and under what conditions judicial review of their commitments can be obtained. In this regard, it is important to note that a person who is found not guilty because he or she was insane at the time of the crime is automatically committed, without an evidentiary hearing to determine if the person is still insane at the time of commitment. Even if the person immediately applies for release on the ground his or her sanity has been restored, a hearing cannot be held on that application until he or she has been confined for at least 180 days. (See § 1026.2, subds. (a), (d); People v. McKee, supra, 160 Cal.App.4th at pp. 1550-1551.) In contrast, a person cannot be committed under the SVPA until a trier of fact finds beyond a reasonable doubt that the person is an SVP. Given the disparate manner in which SVP's and NGI acquittees are committed in the first place, and the lack of any argument from defendant on the point, we conclude that defendant has failed to demonstrate that SVP's and NGI acquittees are similarly situated for purposes of the laws governing judicial review of their commitments. In the absence of such a showing, defendant's equal protection claim fails at the threshold.

VI

Right of Access to the Courts
Defendant contends the amended SVPA denies him his First Amendment right to meaningful access to the courts because (1) an SVP can file a petition for release under section 6605 only if the department determines the person is no longer an SVP; and (2) a petition under section 6608, which can be filed without the concurrence of the department, does not amount to meaningful access to the courts because there is no provision for appointment of a medical expert, the trial court can summarily deny the petition without a *493 hearing if the court determines it is frivolous, and the SVP bears the burden of proof on such a petition.
(21) It is true that "[i]nmates are guaranteed the right to adequate, effective and meaningful access to the courts under the Fourteenth Amendment." (In re Grimes (1989) 208 Cal.App.3d 1175, 1182 [256 Cal.Rptr. 690].) "The right of access to the courts is an aspect of the First Amendment right to petition the government for redress of grievances." (Church of Scientology v. Wollersheim (1996) 42 Cal.App.4th 628, 647 [49 Cal.Rptr.2d 620], disapproved on other grounds in Equilon Enterprises v. Consumer Cause, Inc. (2002) 29 Cal.4th 53, 68 [124 Cal.Rptr.2d 507, 52 P.3d 685].) Defendant, however, has failed to show that the amended SVPA violates that right.
(22) Defendant acknowledges that "Under section 6608, subdivision (a), the SVP detainee has the right to counsel . . . ." With regard to the appointment of a medical expert, we have concluded already that although section 6608 does not expressly provide for the appointment of a defense expert for indigent detainees, such a right is provided by section 6605. As for the court's power (indeed obligation) to deny a petition for release or discharge that is based on frivolous grounds, defendant cannot legitimately assert that he has the constitutional right to an evidentiary hearing on a petition for release or discharge that the court has determined is frivolous. (See Church of Scientology v. Wollersheim, supra, 42 Cal.App.4th at p. 648, fn. 4 ["The right to petition is not absolute, providing little or no protection for baseless litigation or sham or fraudulent actions."].) Finally, defendant offers no authority that suggests his constitutional right to meaningful access to the courts includes the right to have the government prove beyond a reasonable doubt at regular intervals that he remains an SVP. In the absence of such authority, defendant's challenge to the amended SVPA based on his right to access to the courts fails.

VII

Single-subject Rule
Finally, defendant contends he is entitled to relief from the indeterminate commitment imposed on him because "Proposition 83 violated the single subject rule governing ballot initiatives and is therefore unenforceable." The People assert that Proposition 83 did not violate the single-subject rule, but even if it did, defendant's commitment to an indeterminate term remains lawful under the similar provisions of Senate Bill No. 1128 (2005-2006 Reg. Sess.). Defendant's only response to the latter argument is that "SB 1128 . . . should be found unconstitutional" based on his other arguments. We have rejected all of defendant's other arguments, however; thus, even if we were to *494 agree Proposition 83 violated the single-subject rule, that conclusion would not provide any basis for granting defendant relief from the judgment from which he has appealed. For that reason, we need not consider this argument further.

DISPOSITION
The judgment is affirmed.
Sims, Acting P. J., and Raye, J., concurred.
NOTES
[1] All further statutory references are to the Welfare and Institutions Code unless otherwise indicated.
[2] As with most of his other arguments, defendant did not raise this argument in the trial court. The People do not argue forfeiture, however, and instead address all of defendant's arguments on their merits. We will do the same. By doing so, we obviate the need to address defendant's alternate argument that his trial counsel was ineffective for failing to raise these arguments.
[3] This case is distinguishable from People v. Whaley (2008) 160 Cal.App.4th 779 [73 Cal.Rptr.3d 133], petition for review pending (petn. filed Apr. 3, 2008, S162151), because in Whaley the People sought to retroactively convert a two-year commitment under the prior version of the SVPA into an indeterminate commitment under the amended SVPA. The Sixth District Court of Appeal properly concluded that this was an impermissible retroactive application of the amended SVPA. Here, in contrast, the amended SVPA was applied prospectively, at the time the petition for commitment was heard in April 2007.
[4] Our determination that defendant's ex post facto argument is without merit is consistent with two recent decisions by Division One of the Fourth Appellate District. (People v. McKee (2008) 160 Cal.App.4th 1517, 1542-1546 [73 Cal.Rptr.3d 661], petn. for review pending, petn. filed Apr. 24, 2008, S162823; People v. Johnson (2008) 162 Cal.App.4th 1263.)
[5] Our conclusion that defendant has failed to show that indeterminate commitment under the amended SVPA constitutes punishment for purposes of an ex post facto challenge also disposes of his arguments under the double jeopardy clause of the Fifth Amendment and his arguments based on the prohibitions against cruel or unusual punishment in the United States and California Constitutions, because (as defendant acknowledges) all three types of challenges are viable only if the statute at issue imposes punishment.
[6] Like our conclusion on defendant's ex post facto argument, our conclusion on his due process argument is consistent with the recent decision by Division One of the Fourth Appellate District in People v. McKee, supra, 160 Cal.App.4th at pages 1530-1542 and People v. Johnson, supra, 162 Cal.App.4th at pages 1276-1283.
[7] Our conclusion on this point is consistent with the reasoning of Division One of the Fourth Appellate District in People v. McKee, supra, 160 Cal.App.4th at pages 1547-1550 and People v. Johnson, supra, 162 Cal.App.4th at pages 1283-1286.